UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRAND ISLE PARTNERS, LLC**<br>**D/B/A GRAND ISLE RESTAURANT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-505** |
| **ASSURANT AND/OR ASSURANT**<br>**INSURANCE AGENCY, INC.** | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendant Voyager Indemnity Insurance Company ("Voyager"). R. Doc. 19. Plaintiff Grand Isle Partners, LLC ("Grand Isle") opposes the motion. R. Doc. 29. Voyager filed a reply, R. Doc. 34, and supplemental memoranda in support of the Motion to Dismiss, R. Docs. 42, 45, 46-2.

I.  BACKGROUND

This suit arises from an alleged breach of insurance contract concerning loss-of-income claims resulting from the COVID-19 pandemic. Due to the pandemic and governmental orders intended to slow the spread of the coronavirus, Grand Isle, a restaurant and catering business, alleges it suffered severe financial hardships. R. Doc. 1 at 5. Some of the pertinent governmental orders required Grand Isle to temporarily cease operations, whereas others restricted the restaurant's seating capacity. Together, these orders allegedly devastated the business's income. *Id.* at 3-6. Claiming that its losses were covered by its insurance policy, Grand Isle submitted claims to Voyager, its insurer. *Id.* at 11.

Under Grand Isle's "all-risk" property insurance policy ("the Policy") with Voyager, R. Doc. 19-3 at 27, Voyager agreed to cover "direct physical loss of or damage to" Grand Isle's

1

building and other property on its premises "resulting from any Covered Cause of Loss." *Id.* A separate section of the Policy provided for "Business Income (and Extra Expense) Coverage." *Id.* at 46. There were three relevant portions of this coverage: (1) "Business Income," (2) "Extra Expense," and (3) "Civil Authority." *Id.* at 46-47.

First, in the event that Grand Isle experienced "direct physical loss of or damage to property at the premises," the Business Income provision covered "actual loss of Business income [] sustain[ed] due to the necessary 'suspension' of [Grand Isle's] 'operations' during the 'period of restoration.'" *Id.* at 46. The Policy defined the "period of restoration" as the period in which the property would be "repaired, rebuilt or replaced." *Id.* at 97. The Business Income provision also specified that "[t]he 'suspension' must be caused by direct physical loss of or damage to property at premises." *Id.* at 46.

Second, the Extra Expense provision covered "expenses [Grand Isle may] incur during the 'period of restoration' that [it] would not have incurred if there had been no direct physical loss or damage to property." *Id.* Per the Policy, Extra Expense coverage is triggered only if Business Income coverage first applies. *Id.*

Last, the Policy's Civil Authority provision expanded Business Income and Expense Coverage to include loss resulting from action of civil authorities. Specifically, the provision reads: "When a Covered Cause of Loss causes damage to property other than property at the described premises, [Voyager] will pay for the actual loss of Business Income [Grand Isle] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises." *Id.* at 47. "Covered Causes of Loss mean direct physical loss unless the loss is excluded of limited in th[e] policy." *Id.* at 61.

Voyager denied Plaintiff's claims, asserting that coverage under the aforementioned provisions was not triggered because "no direct physical loss" had occurred. R. Doc. 1 at 11. Consequently, Grand Isle sued Voyager for breach of the parties' insurance contract. *Id.* at 13-19. In its complaint, Grand Isle asserted that the term "direct physical loss of" is ambiguous, and therefore the policy should be construed in its favor to cover its loss of ability to use the insured property for its intended purpose. *Id.* at 11-12. Because Grand Isle could not use its building as a restaurant, it claimed that Voyager was required to cover the resulting loss of revenue. *Id.* at 12.

Notably, the Policy contained the following three exclusions: (1) "Exclusion of Loss Due to Virus or Bacteria" ("the Virus Exclusion"), R. Doc. 19-3 at 106, (2) the "Acts or Decisions Exclusion," *Id.* at 93, and (3) the "Loss of Use Exclusion," *Id.* at 63. The Virus Exclusion expressly excluded from coverage "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," and "applies to all coverage under all forms [of the Policy], including but not limited to . . . business income, extra expense or action of civil authority." *Id.* at 106. The "Acts or Decisions Exclusion" excluded "loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body," *id.* at 93, and the "Loss of Use Exclusion" excluded "loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market," *id.* at 63.

II. **PRESENT MOTION**

Voyager filed a motion to dismiss for failure to state a claim. R. Doc. 19. In it, Voyager argues that the insurance policy does not cover the losses in question because (1) the losses were purely economic, and (2) the losses were explicitly excluded from coverage by the Virus Exclusion. R. Doc. 19-2 at 1.

3

First, Voyager argues that Grand Isle fails to state a claim because Grand Isle conceded that its losses did not result from *physical* loss or damage to the premises, the only type of loss covered by the policy. *Id.* at 8. Voyager disputes Grand Isle's theory that the loss of use of the premises constitutes "loss of" the premises sufficient to trigger coverage under the policy. Voyager points out that "numerous courts within the Fifth Circuit and around the country have rejected th[e] very argument" that Grand Isle makes here and instead have concluded that loss of use as a result of governmental orders implemented to slow the spread of COVID-19 does not constitute 'direct physical loss of or damage to property.'" *Id.* at 8.

Second, Voyager argues "[t]he Virus Exclusion, 'loss of use' exclusion, and 'acts or decisions' exclusion are bars to any theory of coverage Plaintiff might articulate." *Id.* Voyager acknowledges that on a Rule 12(b)(6) motion, courts must generally limit their analysis to the facts alleged in the complaint, *id.* at 7, and that Grand Isle's complaint does not make reference to the Virus Exclusion. However, Voyager argues that "a court may consider documents that a defendant attached to the motion which are referred to in Plaintiff's complaint and central to the claims asserted therein." *Id.* at 7 (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). Accordingly, Voyager asserts that the Virus Exclusion, Loss of Use Exclusion, and Acts or Decisions Exclusion must be considered and that they unambiguously preclude Plaintiff's claims for coverage. *Id.* at 18.

Grand Isle opposes the motion for several reasons. R. Doc. 29. First, it reiterates the argument that the Policy was ambiguous, suggesting that the court must "liberally interpret[] [the policy] in favor of coverage." *Id.* at 6-7 (citing *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 05/22/07), 958 So.2d 634). Grand Isle asserts that "'physical loss' does not mean physical damage to a structure," because the terms "loss" and "damage" are not

4

synonymous. *Id.* at 6. Second, Grand Isle argues that pursuant to the Policy's Business Income language, the Policy requires only a "suspension of [] operations" to invoke coverage for lost revenues. *Id.* at 9. Last, Grand Isle argues that the various exclusions are not applicable.

Grand Isle asserts that the Virus Exclusion is inapplicable because the virus itself did not cause the business to close; governmental orders did. *Id.* at 15-16. Grand Isle claims that the Virus Exclusion bars coverage for losses that may occur due to a virus's physical presence on the premises but does not apply, as here, to losses resulting from the secondary effects of a pandemic or epidemic. *Id.* at 16. It also asserts that the Acts or Decisions Exclusion is inapplicable because the exclusion "does not apply if excluded elsewhere in Section I." *Id.* at 18. As for the Loss of Use Exclusion, Grand Isle argues that it is inapplicable because "the loss of use was a direct result of a covered cause in multiple aspects of the policy." *Id.* at 19.

In reply, Voyager argues that Plaintiff fails to confront "the Mountain of Authority Cited" for the proposition that economic losses do not constitute "direct physical loss of or damage to property." R. Doc. 34 at 2. It contends that the Court has held a loss to be physical only when there is "a distinct, demonstrable, physical alteration of the property." *Id.* at 4. Because no such alteration to Grand Isle's property is alleged to have occurred here, there can be no physical loss in this case. *Id.* Furthermore, Voyager argues that Plaintiff fails to confront the body of case law holding that exclusions of loss due to a virus necessarily also exclude losses from coverage due to governmental orders intended to slow the spread of that virus. *Id.* at 7. It asserts that the Virus Exclusion explicitly excludes loss "caused by or *resulting from* any virus," meaning loss resulting less directly from a virus is excluded no less than loss resulting directly from a virus. *Id.* at 8.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a 12(b)(6) motion, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). However, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Typically, a court considering the validity of a plaintiff's claims pursuant to a motion to dismiss is confined to reviewing only the pleadings. However, a court may additionally consider documents attached to the motion to dismiss if they are "referred to in the plaintiff's complaint and central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Such documents may be relied upon because, in attaching them, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499. Accordingly, Voyager is correct in arguing that the Court may consider the Virus Exclusion.

**IV. DISCUSSION**

    **A. Requirement of Direct Physical Loss of or Damage to Property**

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d 822, 829 (E.D. La. 2020) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)). The court's role is to determine the intentions of the parties based on the language of the contract itself, "using their plain, ordinary and generally prevailing meaning," unless those words have acquired a technical meaning. *Id.* "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.*

The first main argument contained in Voyager's motion to dismiss is that the Policy is limited to "physical loss of or damage to" the property and that Plaintiff fails to allege the existence of physical loss or damage as would be necessary to trigger the Policy. All of the relevant provisions in the Policy explicitly require "physical loss of or damage to" the property. R. Doc. 19-3 at 27 ("We will pay for direct physical loss of or damage to Cover Property."); 46 ("The 'suspension' must be caused by direct physical loss of or damage to property at the premises," and "Extra Expense means necessary expenses you incur . . . that you would not have incurred if there had been no direct physical loss or damage to property."); 47 (limiting Civil Authority coverage to "[w]hen a Covered Cause of Loss causes damage to property" and invoking the limits of Business Income and Extra Expense coverage).

Voyager's argument that Grand Isle has not suffered "physical loss of or damage to" its property is persuasive for two reasons. First, "physical loss of or damage to" property typically requires demonstrable, physical alteration of the property. *See Hartford Ins. Co. of Midwest v.*

7

*Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."); *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d at 831 ("The requirement that the loss be 'physical[]' . . . preclude[s] any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

Second, an overwhelming body of recent case law has held that losses incurred as a result of COVID-19 mandates are purely economic in nature. *See, e.g. Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021) (holding that the plaintiff's loss of use of its office did not constitute "physical loss" or "physical damage"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2, --- F. App'x --- (11th Cir. August 31, 2021) ("there must be 'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made'"); *Lafayette Bone & Joint Clinic, Inc. v. Trans. Ins. Co*., No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("every district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement"); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 513 F. Supp. 3d 1163, 1171 (N.D. Cal. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878 (S.D. W. Va. 2020); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00597, 2021 WL 2184878, at *3 (W.D. Wash. May 28, 2021) (holding that the coronavirus did not cause "direct physical loss of or damage to" the property of hundreds of businesses that filed suit against their insurers).[1]

---

[1] Grand Isle cites two out-of-circuit cases to argue that the phrase "physical loss" in the Policy does not require physical alteration to the property. *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D.

When faced with nearly identical circumstances to those at hand, courts in this district have found Voyager's reasoning persuasive. For example, in *Alder & Sons, LLC v. Axis Surplus Insurance Co.*, the plaintiffs, owners and operators of a store and reception venue, carried commercial property insurance that covered "direct physical loss of or damage to Covered Property." No. 2:21-CV-00648, 2021 WL 2476867, at *1 (E.D. La. June 17, 2021). The plaintiffs argued that they suffered such loss when mandates intended to slow the spread of COVID-19 forced them to close. *Id.*[2] The court disagreed, reasoning that "closures mandated by civil authorities due to the COVID-19 pandemic did not cause direct physical loss or damage because their injury is purely economic in nature." *Id.* at *2. Accordingly, the court granted the insurer's motion to dismiss. *Id.*

The Court finds this reasoning convincing. The Policy's language restricting coverage to only "physical loss of or damage to" Grand Isle's property means that the losses alleged by Grand Isle are not covered. Grand Isle does not allege any physical alteration to its property. Therefore, Grand Isle did not suffer "physical loss of or damage to" its property. *See In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d at 831. Although Grand Isle characterizes its temporary inability to use its property for the property's intended purpose due to the pandemic and related government decrees as "physical loss" the clear weight of authority has rejected such arguments, including in the context of the COVID-19 pandemic. *See, e.g., Oral*

---

Mo. 2020); *N. State Deli, L.L.C. v. Cincinnati Ins. Co.*, 20-v-2569, 2020 WL 6281507 (N.C. Sup. Ct. Oct. 9, 2020). These cases, however, go against the grain of the body of caselaw, including directly applicable Fifth Circuit caselaw explaining that both physical loss and damage require demonstrable, physical alteration of the property. *See Hartford Ins. Co. of Midwest*, 181 F. App'x at 470. Additionally, neither of these cases involve insurance policies that, as here, contain an exclusion for losses caused by virus. 478 F. Supp. 3d at 797; 2020 WL 6281507 at *4. *See infra* Section IV.B.

[2] The plaintiffs in *Alder & Sons, LLC* went even further than Grand Isle, arguing that their property was physically damaged by the "presence of any coronavirus particles and the presence of people infected with or carrying coronavirus particles." 2021 WL 2476867 at *2. Nonetheless, the court said there was no direct physical loss of or damage to the property.

*Surgeons, P.C.*, 2 F. 4th at 1141; *Gilreath Family & Cosmetic Dentistry, Inc.*, No. 21-11046, 2021 WL 3870697, at *2, --- F. App'x ---. Accordingly, the Court concludes that Plaintiff fails to plead the existence of physical loss or damage, as is necessary to recover under the policy.

### A. The Virus Exclusion Provision

Additionally, the Court determines that the Policy's Virus Exclusion provision bars Plaintiff's claims. Thus, even if Plaintiff pleaded physical loss or damage to his policy that would otherwise be covered by the Policy, the Virus Exclusion provision operates to preclude recovery here.

Grand Isle argues that this exclusion only bars coverage for losses resulting from the physical presence of a virus on its premises and does not exclude losses resulting from governmental orders mandating the temporary closure of its business. The Court disagrees.

To begin, the language of the Policy strongly suggests that the Virus Exclusion applies broadly. It explicitly excludes from coverage "loss or damage caused by *or resulting from* any virus," indicating that it operates to bar less-direct consequences of a virus. R. Doc. 19-3 at 106 (emphasis added). The Virus Exclusion also states that it "applies to all coverage . . . including . . . action of civil authority." *Id.*  Thus, damages stemming from the actions of civil authority that are taken in connection with a virus—including the governmental orders Plaintiff complains of—are excluded from coverage.

The determination that the Virus Exclusion bars coverage here is bolstered by the rulings of sister courts in this District, which have arrived at the same conclusion in interpreting analogous policy exclusion provisions. For instance, in *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, the court concluded that a similarly-worded virus exclusion "unambiguously exclude[d] coverage for losses resulting from COVID-19," including the loss of use resulting from a

10

governmental business-closure order. 535 F. Supp. 3d 556, 570 (E.D. La. 2021). The court reasoned that, because closure orders were issued "either concurrently, or in sequence with, the spread of COVID-19 across the State of Louisiana," the COVID-19 virus "remain[ed] part of the causal chain that resulted in [the plaintiff's] alleged losses." *Id.* at 571.

Other courts have reached the same conclusion. In *Hajer v. Ohio Security Insurance Co.*, the court considered a property insurance policy that excluded coverage for "loss or damage caused directly or indirectly by . . . Virus or Bacteria." 505 F. Supp. 3d 646, 652 (E.D. Tex. 2020). When the plaintiff's business sustained losses as a result of stay-at-home orders, the plaintiff argued that this policy's virus exclusion was inapplicable. Like Grand Isle, the plaintiff there contended that the virus exclusion was limited to situations "where a virus is the fully realized and actual cause of the loss." *Id.* The court spurned this argument, holding that the text of the policy's virus exclusion clause contained no such limitation; rather, the exclusion applied so long as a virus was at least "indirectly" responsible for the business's loses. *Id.*

The Court agrees with the reasoning of *Muriel's New Orleans, LLC* and *Hajer*. The Policy's Virus Exclusion precludes from coverage losses resulting from government-mandated closures intended to slow the spread of COVID-19. Accordingly, Voyager is correct that, even if there was "loss of or damage to" the property, the Virus Exclusion prevents Grand Isle from recovering for the alleged losses.[3]

### B. CONCLUSION

For these reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, R. Doc. 19, filed by Voyager

---

[3] Based on the lack of "direct physical loss" and the applicability of the Virus Exclusion in this case, the Court need not address the applicability *vel non* of the Acts or Decisions Exclusion or the Loss of Use Exclusion.

Indemnity Insurance Company is **GRANTED**.

New Orleans, Louisiana, this 20th day of January, 2022.

_____
HON. ELDON E. FALLON
UNITED STATES DISTRICT JUDGE